# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| TOBI GELLMAN, AS TRUSTEE OF THE § <br> MAYER MICHAEL LEBOWITZ TRUST § <br> § <br> vs. § <br> § <br> TELULAR CORPORATION, et al. § <br> § | | CASE NO. 2:07-CV-282-CE |

## MEMORANDUM OPINION AND ORDER

**I.    Introduction**

Defendants Telular Corporation ("Telular"), Napco Security Technologies, Inc. ("Napco"), and Visonic Inc. ("Visonic") (collectively "Defendants") moved under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(7) to dismiss with prejudice Plaintiff's claims against them. (Dkt. No. 160). Defendants claim that Plaintiff is not the sole owner of the patent in suit and has failed to join the remaining owner as a necessary party under Rule 19. Because Defendants have secured a broad license including a covenant not to sue from the other alleged owner of the patent, they maintain Plaintiff's failure to join the other alleged owner cannot be cured.

Mayer Lebowitz ("Lebowitz") and James Seivert ("Seivert")[1], the named inventors of U.S. Patent No. 6,075,451 ("the '451 patent"), passed away recently and documentation as to their contractual relationship is limited. Plaintiff has produced documents suggestive of a contract between the parties that would have obligated Seivert to assign his interest in the '451 patent to Lebowitz's company. Plaintiff has not produced, however, a final contract signed by the inventors. Seivert's estate was subpoenaed to produce documents relating to Seivert's relationship with

---

[1] The Court notes that "James Sievert" is the name listed on the '451 patent, but the parties do not dispute that Lebowitz's co-inventor's actual name was John James Seivert.

Lebowitz and, before the subpoenas were quashed[2], agreed to provide all documents in its possession or control relating to the relationship between the inventors. For the reasons outlined below, the Court is persuaded the case must be dismissed.

## II.     Factual and Procedural Background

Plaintiff filed the present action on July 6, 2007 and amended her complaint on April 15, 2009. Defendants subsequently answered and counterclaimed. On April 26, 2010, Defendants filed the present motion to dismiss for lack of standing.

The inventors, Lebowitz and Seivert, collaborated to produce several innovations, including those that led to the patent in suit. Lebowitz was the owner and president of Cellular Alarm Systems, Inc. ("CAS") and Cellular Alarm Products, Ltd. ("CAP"), companies in the business of designing and building alarm systems for homes and businesses, among other things. Seivert worked for Tymer Corporation ("Tymer") and Automated Controls and Engineering Company ("AC&E"), companies in the business of designing electrical and other systems on a contract basis. During late 1994, Lebowitz and Seivert began negotiating a consulting agreement whereby Seivert would work for Lebowitz as an independent contractor and was tasked with helping Lebowitz develop novel technologies.

Although no final signed version of the contract has been produced, Plaintiff has produced two unsigned versions of a consulting contract between the parties titled "AGREEMENT FOR CONSULTING SERVICES." The first version, dated October 18, 1994, provided in paragraph 8 that:

---

[2]     Plaintiff served subpoenas on Seivert's heirs in the Dallas Division of the Northern District of Texas and the Houston Division of the Southern District of Texas.

> All written materials and any and all ideas, discoveries, inventions, improvements, reports, programs, manuals, tapes, listings, software, systems or enhancements or modifications thereto, developed, prepared, conceived, made, discovered, or suggested by Consultant when performing services pursuant to this Agreement, including all such developments as are originated or conceived during the term of this Agreement, but are completed or reduced to practice thereafter ("Work Products"), shall be and remain the exclusive property of Cellular Alarm. Consultant agrees to execute any and all assignments or other transfer documents which are necessary, in the sole opinion of Cellular Alarm, to vest in Cellular Alarm all right, title, and interest in such Work Products. Consultant shall from time to time at the request of Cellular Alarm, at any time during the term of this Agreement or thereafter, execute any patent papers covering such inventions or improvements, as well as any papers that Cellular Alarm may consider necessary or helpful in the prosecution of applications for patents thereon or in connection with litigation or controversy relating thereto provided, however, that all expenses incident to the filing of such applications and the prosecution thereof and the conduct of such litigation shall be borne by Cellular Alarm.

This provision remained unchanged in the subsequent revision of the contract dated November 1, 1994.

Plaintiff also produced a document entitled "Addendum to AGREEMENT FOR CONSULTING SERVICES." This undated document, with signature blanks for both Lebowitz and Seivert but no signatures, provides as follows:

> Consultant's business consists of designing and implementing various electronic circuits and products for its customers. Ideas, conceptions and procedures utilized in performing services for Cellular Alarm Products, Ltd. can and will be used in forming Consultant's general skill and knowledge and performance for other customers. It will be Consultant's responsibility to inform Cellular Alarm Products, Ltd., if work done for Cellular Alarm Products, Ltd. is also to be used by Consulting for another client(s). Consultant will not perform services for a direct or indirect competitor of Cellular Alarm Products, Ltd., during the period of this agreement or for a period of two years after the termination of this agreement.

Plaintiff argues that the existence of this addendum is some evidence that Lebowitz and Seivert eventually entered into an "AGREEMENT FOR CONSULTING SERVICES." Plaintiff has produced additional evidence of an agreement including checks from CAP to both Tymer and AC&E signed by Lebowitz and Plaintiff and an assignment between Lebowitz and Seivert with Seivert assigning his interest in a different patent application to Lebowitz. This assignment, recorded with the patent office for the patent in suit, actually relates to a different, subsequently abandoned application.

### III. Legal Standard

The party invoking federal jurisdiction bears the burden of establishing standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Because the elements of standing are not mere pleading requirements but an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of litigation. *Id.* At the pleading stage, general factual allegations may suffice. *Id.*

Federal Rule of Civil Procedure 12(b)(1) is the procedural mechanism for challenging a court's subject matter jurisdiction. *See Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001). "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* The party asserting jurisdiction bears the burden of proof. *Id.* "The burden of demonstrating standing falls to [the plaintiff], as '[i]t is well established . . . that before a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite

standing to sue.'" *Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026 (Fed. Cir. 1995) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990); citing *Sicom Sys., Ltd. v. Agilent Tech., Inc.*, 427 F.3d 971, 975-76 (Fed. Cir. 2005)); *see also Voda v. Cordis Corp.*, 476 F.3d 887, 892 (Fed. Cir. 2007). "In examining a Rule 12(b)(1) motion, the court is empowered to consider matters of fact which may be in dispute." *Id.* at 161. Conversely, undisputed facts present in the record are accepted as true. *Id.* When jurisdiction rests on a disputed factual issue, however, the court reviews the parties' submitted evidentiary materials, and the plaintiff must prove that the facts supporting subject matter jurisdiction are true by a preponderance of the evidence. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

Absent the voluntary joinder of all co-owners of a patent, a co-owner alone will lack standing. *Israel Bio-Eng'g Project v. Amgen Inc.*, 475 F.3d 1256, 1264-65 (Fed. Cir. 2007). When a defendant challenges a plaintiff's standing in a patent action by alleging the plaintiff does not own the whole patent, the plaintiff may avoid dismissal by showing, through contract or assignment, that it holds legal title to the patent. *Id.*

Determining whether to dismiss a case under FED. R. CIV. P. 12(b)(7) for failure to join an indispensable party requires a two-step inquiry. First, the district court must determine whether the party should be added under the requirements of Rule 19(a). Rule 19(a)(1) requires that a person subject to process and whose joinder will not deprive the court of subject-matter jurisdiction be joined if:

> . . . (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the persons ability to protect the interest; . . .

5

FED. R. CIV. P. 19(a)(1). The party advocating joinder has the initial burden of demonstrating that a missing party is necessary, but once that showing is made the burden of disputing joinder falls to the party who opposes it. *Hood ex rel. Mississippi v. City of Memphis, Tenn.*, 570 F.3d 625, 629 (5th Cir. 2009). All entities with an independent right to enforce a patent are necessary parties to an infringement suit. *IpVenture, Inc. v. Prostar Computer, Inc.*, 503 F.3d 1324, 1325 (Fed. Cir. 2007).

If the necessary party cannot be joined without destroying subject-matter jurisdiction, the court must then determine whether that person is "indispensable," that is, whether litigation can be properly pursued without the absent party. *Id*. Factors that the district court is to consider in making this determination are laid out in Rule 19(b):

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; . . . (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

When the title to a patent is disputed or the equitable title and legal title to the patent are held by different parties, the parties holding legal title are necessary parties to actions at law. *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1578-79 (Fed. Cir. 1991) (citing *Crown Die & Tool Co. v. Nye Tool & Mach. Works*, 261 U.S. 24, 40-41 (1923)). One seeking to recover money damages for past infringement of a United States patent must have held legal title to the patent during the time of the infringement or have received an explicit assignment of the right to sue for past infringement as part of the assignment. *Id.*

## IV. Analysis

Defendants seek dismissal for lack of standing by alleging that Plaintiff does not hold full

legal title to the patent in suit. To avoid dismissal, Plaintiff must show ownership either through assignment or by operation of law. Plaintiff has advanced three theories of ownership through argument and evidence: (1) that Seivert's interest was joined with Lebowitz's interest as a result of a consulting agreement between the inventors, (2) that Seivert assigned his interest to Lebowitz's company pursuant to a written agreement, and (3) that Seivert's interest never vested because of the hired-to-invent doctrine. Because Plaintiff has not produced a written assignment of the patent in suit and her alternative theories create an obligation to assign the patent rather than an actual assignment, Plaintiff has failed to demonstrate complete legal title to the patent-in-suit. Plaintiff has exhaustively searched her own records and, by subpoena, the records of Seivert's heirs. Because this search has not produced sufficient evidence of legal title to the patent-in-suit, the Court must dismiss the present action.

### A. The Contract Between the Inventors

#### 1. The Existence of a Contract

Under Texas law, whether a contract falls within the statute of frauds is a question of law. *Bratcher v. Dozier*, 162 Tex. 319, 321 (1961). Under the Texas Statute of Frauds, a promise or agreement which is not to be performed within one year of making the agreement is not enforceable unless it is in writing and signed by the person charged with the promise. TEX. BUS. & COM. CODE § 26.01. However, when the party seeking to assert a contract can produce no signed writing to satisfy the statute of frauds, partial performance of the terms of the unsigned contract may provide an exception. *Bookout v. Bookout*, 165 S.W.3d 904, 907 (Tex.App.-Texarkana 2005, reh'g overruled). Under the partial performance exception, contracts that have been partly performed but do not meet the requirements of the statute of frauds may be enforced in equity if denial of

7

enforcement would amount to a virtual fraud. *Exxon Corp. v. Breezevale, Ltd.*, 82 S.W.3d 429, 439 (Tex.App.-Dallas, pet. denied). The partial performance must unequivocally refer to the agreement and corroborate the fact that a contract was made. *Id.* The performance relied upon to take a parol contract out of the statute of frauds must be such that it could have been done with no other design than the particular agreement sought to be enforced. *Id.* at 439-40.

This Court may assume, *arguendo*, that either (1) the statute of frauds does not apply or (2) that the writings before the Court satisfy the statute of frauds, when coupled with the inventors' partial performance. However, even if the Court finds sufficient evidence to infer the existence of an agreement between the parties containing paragraph 8 as quoted above, that would not resolve Plaintiff's standing issue. Under controlling Federal Circuit law, paragraph 8 contains an obligation to assign future inventions which would still require a written assignment to transfer legal title.

    **2.**    **Obligation of Assignment**

The question of ownership of patent rights is typically a question resolved by state courts under state law, but the question of whether contractual language effects a present assignment of future rights or an agreement to assign rights in the future is resolved by Federal Circuit law. *Board of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832, 841 (Fed. Cir. 2009), *cert. granted,* --- S.Ct. ---- (Nov. 1, 2010). To determine whether a contractual provision is a present assignment of future rights or a promise to assign rights in the future, the language of the contract is dispositive. *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1253 (Fed. Cir. 2000). Where the contract language is prospective and states that work product "shall be the property of the client" and/or that "all rights thereto will be assigned" by the contractor, the contract is not a present assignment but an agreement or promise to assign in the future. *Id.* (citing *Arachnid*, 939 F.2d 1574,

1576-81). Such a contract may grant the client equitable rights to the invention, but those rights do not operate as an immediate assignment of legal title to the invention. *Stanford*, 583 F.3d 832, 841-42 (Fed. Cir. 2009). However, when a contractor agrees "to grant and does hereby grant" or "hereby conveys, transfers and assigns" to the client the rights and title to future inventions, no further act would be required once the invention came into being and the transfer of title would occur by operation of law. *Speedplay*, 211 F.3d at 1253 (citing *Filmtec Corp. v. Allied-Signal Inc.*, 939 F.2d 1568, 1570 (Fed. Cir. 1991)).

Paragraph 8 of the unsigned agreement provides that any and all rights to any future inventions "shall be and remain the exclusive property of Cellular Alarm." In that paragraph, Seivert further agreed to "execute any and all assignments or other transfer documents which are necessary, in the sole opinion of Cellular Alarm, to vest in Cellular Alarm all right, title, and interest in" such inventions. Here, the language is prospective and includes a promise to make future assignments, similar to the language in *Arachnid*. *See* 939 F.2d at 1576. Paragraph 8 reads as a promise to assign rights in the future rather than a present assignment of future rights. *See Speedplay*, 211 F.3d at 1245. Therefore, even assuming an enforceable contract exists, Plaintiff would lack standing under this agreement absent evidence that Seivert complied with that promise and assigned the patent in suit because, at most, the unsigned agreement would provide Plaintiff equitable rather than legal title.

### B. Assignment by Agreement

Plaintiff has produced an assignment that was filed with the Patent Office. That assignment does not refer to the patent in suit by either name or number and appears, instead, to refer to a different patent application that was abandoned after final rejection. Plaintiff has produced no other evidence of assignment. Accordingly, Plaintiff has not proven ownership by assignment.

9

### C. Hired to Invent

Finally, Plaintiff argues that, because Seivert was hired by Cellular Alarm to develop and invent the subject matter of the patent in suit, the rights to the patent belonged to Cellular Alarm and thus to Plaintiff. Defendants argue that the "hired to invent" doctrine advocated by Plaintiff is obscure and rarely applied and would not apply to Seivert because of his status as an independent contractor.

In *Solomons v. U.S.*, the Supreme Court held that "if one is employed to devise or perfect an instrument, or a means for accomplishing a prescribed result, he cannot, after successfully accomplishing the work for which he was employed, plead title thereto as against his employer." 137 U.S. 342, 346 (1890); s*ee also Standard Parts Co. v. Peck*, 264 U.S. 52, 59-60 (1924) (holding that an independent contractor engaged to "devote his time to the development of a process and machinery" to solve a particular problem for compensation had no legal right to a patent on the inventions he develops in that employment absent contract to the contrary). "The proceeds of the very thing the employee is hired to do belong as a matter of law to the employer even though it be so personal a thing as the brain child of an inventor." *Union Terminal Co. v. Pickett*, 118 F.2d 328 (5th Cir. 1941). Whether the hired-to-invent doctrine applies depends on whether the employee was hired to invent a specific thing or devote his efforts to a particular problem. *Gasser v.Infanti Intern., Inc.*, 353 F.Supp.2d 342, 353 (E.D.N.Y. 2005). When the hired-to-invent doctrine applies, the "employer is the equitable owner of the invention and the employee is obligated to assign to the employer any patent that may be obtained on the invention." *Melin v. U.S.*, 478 F.2d 1210, 1213 (Ct. Cl. 1973).

Although Defendants argue that the hired-to-invent doctrine does not apply to independent

contractors, the Court need not resolve that question. The hired-to-invent doctrine grants an obligation of assignment and equitable title, not legal title. *See Melin*, 478 F.2d at 1213. Accordingly, unless Seivert executed an assignment, his heirs still hold legal title to Seivert's original interest in the patent-in-suit and held legal title at the time the suit commenced. No such assignment has been produced. Because Seivert or his heirs held a portion of the legal title to the patent at the time this action was filed, Plaintiffs lack standing. *See Arachnid*, 939 F.2d at 1578-79.

## V.     Conclusion

Plaintiff has failed to provide a written assignment transferring Seivert's rights to the patent in suit to Lebowitz. Although Plaintiff has produced evidence supportive of multiple theories of obligation of assignment, absent an actual transfer of legal title, that title remained with Seivert and, after his death, passed to his heirs. Because standing to bring this civil action depends on legal rather than equitable title, and all parties holding legal title were not joined as Plaintiffs, Defendants' motion to dismiss for lack of standing is GRANTED. This case is DISMISSED WITHOUT PREJUDICE.[3] Plaintiff may refile in the future if she gains full legal title to the patent in suit.

SIGNED this 14th day of December, 2010.

_____
CHARLES EVERINGHAM IV
UNITED STATES MAGISTRATE JUDGE

---

[3] The Court declines to address the parties' arguments on license at this time. Whether Defendants were bona fide purchasers for value depends on a number of facts not currently before this court. That issue is also moot unless Plaintiff can secure legal title to the '451 patent in the future or join all legal title holders in a suit for infringement. Defendants' license defense may be raised and tested should either of these events occur.